894 F.2d 672
 Vernon A. TWIGG; Karen Twigg, Plaintiffs-Appellees,
v.
NORTON COMPANY, Defendant-Appellant,
Baltimore & Ohio Railroad Company, Defendant-Appellee,
and
Kennecott Corporation, Defendant.
Vernon A. TWIGG, Plaintiff-Appellee,
and
Karen Twigg, Plaintiff,
v.
BALTIMORE & OHIO RAILROAD COMPANY, Defendant-Appellant,
Norton Company, Defendant-Appellee,
and
Kennecott Corporation, Defendant.
 Nos. 88-3619, 88-3620.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1989.
Decided Jan. 29, 1990.
 
 James Earl Gray (Linda S. Woolf, Goodell, Devries, Leech & Gray, on brief), Ransom J. Davis (H. Russell Smouse, Nancy S. Allen, Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, Md., on brief) for appellant.
 Richard M. Huhn (Grieser, Schafer, Blumenstiel & Slane Co., L.P.A., Columbus, Ohio, William P. Baker, Baker & Baker, Baltimore, Md., on brief) for appellee.
 Before RUSSELL and SPROUSE, Circuit Judges, and VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellee Vernon A. Twigg brought this action against his former employer, The Baltimore and Ohio Railroad Company (hereafter "B & O"), pursuant to the provisions of the Federal Employers' Liability Act (hereafter "FELA"), 45 U.S.C. Secs. 51 et seq., and against the Norton Company (hereafter "Norton") for negligence, strict liability in tort, and breach of implied and express warranties. Appellee Karen Twigg, wife of Vernon, sued Norton for loss of consortium. West Virginia law controls. Following a trial by jury, a verdict against the railroad for $203,400 and a verdict against Norton for $203,400 were rendered in favor of Vernon Twigg.[1] Karen Twigg obtained a verdict of $75,000 on her consortium claim against Norton.
 
 
 2
 Both B & O and Norton then filed motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. These motions were denied except as to Karen Twigg. By way of remittitur, the district court reduced the award for loss of consortium to $25,000. Upon motion, the judgment in favor of Vernon Twigg was modified, and a joint and several award of $406,800 was entered against the B & O and Norton. Both parties filed timely notices of appeal. For the reasons set forth below, the judgment of the district court is hereby affirmed in part, reversed in part, and remanded.
 
 I.
 
 3
 The salient facts are as follows. Vernon A. Twigg was employed by the B & O as a welder, a job in which he had much experience. In April 1985, Twigg and a co-worker, Ernest Stone, were assigned to repair a section of B & O track located near Capon, West Virginia. This job required the two men to weld and grind the track surface. Upon completion of the welding, Stone decided to change the wheel on the surface grinder before beginning the process of smoothing the cooled weld. Stone testified that he replaced the existing wheel with a new one taken from a sealed and undamaged Norton carton. Stone further testified that he examined the new grinding stone to determine whether there were any apparent cracks, dampness or additional residue, as required by B & O safety rules. Detecting nothing amiss, Twigg and Stone proceeded to attach the new grinding wheel to the surface grinder. Admittedly, they did so following a procedure in violation of B & O safety rules. Specifically, Twigg held the wheel in place by lodging a rail spike between the wheel and the machine housing while Stone tightened the bolts in place.
 
 
 4
 Twigg allowed the surface grinder to warm up and lowered it over the weld. Upon contact with the rail, the grinding stone immediately shattered, splintering into small pieces, one of which struck Twigg's right hand. Although he did not think it to be serious at the time, Twigg's injury from the flying stone resulted in permanent damage to his right hand, precluding him from returning to work with the railroad or from obtaining other suitable employment.II.
 
 
 5
 On appeal, Norton asserts that the district court erred in denying its motion for judgment notwithstanding the verdict as the plaintiffs failed to present substantial evidence that a defect existed in the grinding stone when it left Norton's control.
 
 
 6
 "The question to be resolved when deciding a motion for judgment notwithstanding the verdict is whether there is evidence on which a jury can properly base a verdict." Lust v. Clark Equipment Co., 792 F.2d 436, 437 (4th Cir.1986). Here, plaintiffs' expert was of the opinion that the grinding wheel was defective when it left the control of the manufacturer. He further stated that:
 
 
 7
 It's my opinion that the failure of the adhesion between the stone and the mounting plate allowed the grinding wheel to separate from the mounting plate at--with a very high energy, at a high speed, and it's further my feeling that it probably struck other object nearby and broke up into pieces, one of which struck Mr. Twigg.
 
 
 8
 While there may be a question about the competency of the expert witness and of the value of his testimony, we believe it was sufficient to justify submission of the cause to the jury, and that the jury was properly instructed as to the applicable law of the case. We therefore affirm the judgment rendered against Norton on the basis of the opinion of the district court.
 
 III.
 
 9
 The B & O also alleges error in the district court's denial of its motion for a judgment notwithstanding the verdict or in the alternative for a new trial. B & O argues that the court erred in failing to exclude certain "surprise" testimony concerning the condition of the equipment used by Twigg.
 
 
 10
 The B & O contends that the case against it was clouded by a change in position of the plaintiffs with regard to the theory of liability. We agree. From the outset, the case against B & O was postured on the basic assertion that B & O supplied a defective piece of equipment to its employee. The complaint, amended complaint, answers to interrogatories and pre-trial order all made it clear that such a theory was the sole basis of B & O's alleged liability. During his opening statement, counsel for the plaintiffs argued that any liability of B & O was predicated solely on the defect in the grinding stone. Not until his cross-examination, when he was presented with a specification drawing of the grinding mechanism itself, did Twigg make the allegation that the machine lacked an extended protective guard. Such allegation arose over 2 1/2 years after the accident had occurred and survived the course of exhaustive discovery during which Twigg was asked about the condition of the equipment he used. At his deposition, Twigg stated clearly that he considered only the grinding stone to be defective. This assertion came after counsel for B & O affirmatively asked Twigg to identify any and all defects in the grinding machine, as the following colloquy demonstrates:
 
 
 11
 Q. Under "Was equipment or tool defective?", the box is checked yes. Now, was that your answer?
 
 
 12
 A. Yes, sir. I consider it a piece of defective equipment.
 
 
 13
 Q. What did you consider to be defective?
 
 
 14
 A. The wheel.
 
 
 15
 Q. Obviously this grinding machinery was composed of a lot of parts, the wheel unit being called the wheelbarrow grinder. Are you referring to the grinding wheel, the stone itself?
 
 
 16
 A. I'm referring to the cup grinding wheel.
 
 
 17
 Q. Not the surface grinder?
 
 
 18
 A. No.
 
 
 19
 Q. Just the wheel?
 
 
 20
 A. Right.
 
 
 21
 Q. Based on what you know, was there anything else that caused that accident except the defective grinding wheel?
 
 
 22
 A. No, there is nothing that could have.
 
 
 23
 During the course of oral argument before this court, counsel for the appellees admitted that Twigg's trial testimony, which was contrary to that given during his deposition, came as a surprise and that such a shift in position likely prejudiced B & O. We believe that under these particular circumstances B & O is entitled to a new trial.
 
 
 24
 The rules of civil procedure were adopted by the federal judiciary to insure that causes were fully and fairly litigated by parties to the action from the outset. Included are the rules of pre-trial discovery, Fed.R.Civ.P. 16, 26-37, drafted to narrow and clarify the basic issues between the parties in order that they may obtain the fullest possible knowledge of the issues and facts before trial. See 8 Wright & Miller, Federal Practice and Procedure Sec. 2001. As Justice Brennan stated:
 
 
 25
 The technique of playing the cards close to the vest and hoping by surprise or maneuver at the trial to carry the day, whether or not right and justice lies on the side of one's client, won't be tolerated. It was and is great sport, but hardly defensible as a system for determining causes according to truth and right. In pretrial procedure, made effective through a precedent broad discovery practice, lies the best answer yet devised for destroying surprise and maneuver as twin allies of the sporting theory of justice.... Pretrial discovery and pretrial conference procedures can truly be employed as a scalpel to lay bare the true factual controversy.
 
 
 26
 Changes in Trial Tactics, Address Before the American College of Trial Lawyers (April 1958).
 
 
 27
 Nonetheless, surprise does not warrant a new trial unless it deprives the party of a fair hearing. Brady v. Chemical Constr. Corp., 740 F.2d 195 (2d Cir.1984). The movant must show "reasonably genuine surprise," Air Et Chaleur, S.A. v. Janeway, 757 F.2d 489, 495 (2d Cir.1985), which necessarily was "inconsistent with substantial justice" and which resulted in actual prejudice. Fed.R.Civ.P. 61. See Conway v. Chemical Leaman Tank Lines, Inc., 687 F.2d 108 (5th Cir.1982); Sedgwick v. Giant Food, Inc., 110 F.R.D. 175 (D.D.C.1986). Here, there is little doubt, as the appellees concede, that the assertion of a new theory of liability mid-trial resulted in actual prejudice to B & O. The result was that B & O was not given an opportunity to satisfactorily prepare to rebut the assertion that the machine itself was defective by either positively showing the existence of the protective guard or by showing by way of expert testimony that the equipment was appropriate for the use for which it was employed, with or without this protective device.
 
 
 28
 The district court, in denying B & O's motions, found import in the fact that, after Twigg's testimony, no motion for a continuance was made. B & O did, however, make a timely motion for a mistrial. We believe such objection to be satisfactory to preserve this issue for appeal. Here, by moving for a mistrial, counsel for B & O served notice on the court and to opposing counsel that he found the testimony of Twigg to be prejudicial to its case. While some jurisdictions have held that a motion for continuance is a prerequisite to obtaining a new trial on the ground of unfair surprise,[2] such a rule is not ironclad. See Conway v. Chemical Leaman Tank Lines, Inc., 687 F.2d 108, 113 (5th Cir.1982). Here, counsel for the appellees moved with deliberate speed in apprising the court of the prejudicial effect of Twigg's testimony. By admission, counsel for the appellees was surprised and realized the potential prejudicial effect Twigg's testimony might have on B & O's defense. The record reflects that counsel for B & O was alert to this fact and moved in the only direction he believed appropriate in securing his client relief from the damage caused by Twigg's testimony.
 
 
 29
 The briefs as presented to this court show that B & O did in fact suffer prejudice when, without warning, the appellee introduced a new theory of liability. Such prejudice mandates that we remand this cause for a new trial to be limited to the issue of B & O's alleged negligence.
 
 
 30
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 The total damages assessed by the jury totalled $452,000. This award was reduced 10% upon a finding by the jury that Twigg was contributorily negligent
 
 
 [2]
 See Melanson Co. v. Hupp Corp., 391 F.2d 902 (3d Cir.1968); Moylan v. Siciliano, 292 F.2d 704 (9th Cir.1961); W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 569 F.Supp. 589 (D.N.J.1983), aff'd in part and rev'd in part, 746 F.2d 215 (3d Cir.1984)