JOHNSON & TOWERS BALTIMORE, INC., Plaintiff/Counter Defendant,

v.

VESSEL "HUNTER" and Clayton Katski, Defendants/Counter Plaintiffs,

and

New Hampshire Insurance Group, Third Party Defendant.

Civ. No. N–91–77.

United States District Court, D. Maryland.

Dec. 4, 1992.

Edward Hartman, III, Annapolis, MD, for third party plaintiff.

Steven R. Migdal, Esq., Annapolis, MD, for third party defendant.

### MEMORANDUM

NORTHROP, Senior District Judge.

Pending before the Court are two motions: 1) New Hampshire Insurance Group's ("NHIG") Motion for a New Trial and Amendment of Judgment; 2) a petition for attorney's fees and costs filed by Clayton O. Katski ("Katski") at the Court's request. Both motions are opposed. A hearing on these motions was conducted on October 20, 1992. For the reasons stated herein, NHIG's motion for a New Trial and Amendment of Judgment will be denied, while Katski's Petition for attorney's fees and costs will be granted subject to the Clerk of the Court's determination of allowable costs under Rule 54(d).[1]

### I. Background

Plaintiff Johnson & Towers Baltimore, Inc. ("Johnson & Towers") brought suit in admiralty to collect payment for work performed in June and July of 1990 on Katski's yacht, the vessel "Hunter." The Hunter is a 1970, 53–foot, Sport Fisherman.

In June of 1990, Defendant contacted Johnson & Towers and requested that they investigate and repair the cause of some smoking in the Hunter's starboard engine. An investigation of the problem revealed that pieces of engine insulation which wrap around the exhaust riser were being ingested into the engines, thereby causing the engine smoke and damage. Both engines needed extensive repairs. There is no dispute that the ingestion of the engine insulation caused the engine problems.

Katski was advised of the problem and he authorized Johnson & Towers to perform all necessary repair work on both the port and starboard engines. Between June 4, 1990 and July 5, 1990, Plaintiff performed the repair work requested and authorized by Katski. On July 25, 1990, Johnson & Towers submitted an invoice in the amount of $27,-469.25 to Katski for the repairs performed on the Hunter.

Shortly after Katski authorized the repairs to the engines, Defendant submitted the claim to his insurer, NHIG. NHIG sent a marine surveyor, Mr. C. Robert Skord ("Skord"), to determine the cause, nature and extent of damage to Katski's yacht. Skord claimed that the engine damage from the exhaust insulation arose from a type of damage that was not covered under Katski's yacht insurance policy. Under the policy's terms, damage due to gradual deterioration or normal wear and tear was not covered, and NHIG claimed the engine damage was due to a gradual deterioration of insulation around the engine's exhaust.

Katski disagreed. Katski claimed that the damage to the exhaust resulted from physical trauma. Katski maintained that such damage was covered by the insurance policy and, therefore, NHIG was liable for the repair costs.

---

1. With respect to Katski's petition for costs, the Clerk of the Court is directed to determine which costs Katski will be allowed to recover under Rule 54(d). Fed.R.Civ.P. 54(d). Katski will recover both those Rule 54(d) costs that Katski incurred in maintaining his third party claim against NHIG, as well as those costs that are allowable under Rule 54(d), for which Katski is liable to Johnson & Towers in its action against him.

Defendant brought a third-party claim against his insurance company alleging that the insurance policy covered these repairs and arguing that NHIG was responsible for all costs resulting from the instant dispute between Katski and Johnson & Towers. These costs include: 1) Katski's legal expenses associated with bringing the third party claim against NHIG; 2) Katski's legal expenses in defending against Johnson & Towers' claim against him and his counter-claim against Plaintiff; 3) the repair invoice amount, and 4) Johnson & Towers' claim for interest, costs and legal fees assessed against Katski pursuant to his finance agreement with Plaintiff.

The Court conducted a four-day non-jury trial on March 19, 20, 24 and 25, 1992. At the close of trial, this Court made the following findings of fact and legal conclusions. First, that Johnson & Towers did not cause the damage to the vessel Hunter. Katski failed to prove by a preponderance of the evidence that Plaintiff's work on the vessel was negligent, or was the cause of the engine damage. Second, Katski had a valid contract with Plaintiff. Katski's credit-finance agreement, signed invoice, and his oral authorization of the repairs formed the basis of his obligation to the Plaintiff. Katski was, therefore, liable to Plaintiff.

In a subsequent Memorandum Opinion setting forth additional the findings of fact and conclusions of law for the remaining issues, the Court found that the damage to the Hunter was a loss covered by his insurance policy with NHIG. *Johnson & Towers Baltimore Inc. v. Vessel "Hunter" et al.* 802 F.Supp. 1343 (D.Md.1992). As the damage to Katski's engines was a covered loss, this Court found NHIG liable to Katski for the cost of the repairs, Katski's legal expenses in both defending against the Johnson & Towers action against him and in bringing his third party claim against NHIG. *Id.* The Court also found NHIG liable for any of Katski's costs that claimable under Rule 54(d) that were associated with both Johnson & Towers' action against him, as well as costs in the maintenance of his third party claim. *Id.* The Court denied Katski's request for recovering the Johnson & Towers

service charges and attorney's fees were assessed against him. *Id.*

Third Party Defendant, NHIG, now moves for a new trial and to amend the judgment to exclude the legal expenses and court costs assessed against it.

## II. *NHIG's Motion for a New Trial*

In a motion for a new trial, the district court can exercise its discretion to grant a new trial if the verdict, even though supported by enough evidence to defeat the motion for judgment as a matter of law, is against the *weight* of the evidence. Fed. R.Civ.P. 59. *Taylor v. Home Insurance Co.,* 777 F.2d 849, 855 (4th Cir.1985). Unlike a judgment as a matter of law, a district court may weigh and assess the credibility of witnesses in ruling on a motion for a new trial. *Id.; Wyatt v. Interstate and Ocean Transport Company,* 623 F.2d 888, 891–92 (4th Cir.1980). Indeed, the district court has a duty to order a new trial in order to prevent an injustice. 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2805 at 38 (1973).

In this case, NHIG avers two separate grounds for granting a new trial. First, NHIG contends that Katski's claim and the Court's judgment went beyond the pleadings. Second, NHIG claims that the judgment goes against the weight of the evidence and is predicated upon a misinterpretation of the policy. These contentions will be considered *seriatim.*

NHIG argues that the only negligence alleged by Katski in his Third Party Complaint was that of Johnson and Towers. Because the Court found that the Hunter's damage was due to negligent repairs performed by a repair shop other than by Johnson & Towers, NHIG claims it was prejudiced by what it characterizes as an unfair and surprising Court conclusion.

NHIG's assertions that it was unfairly surprised are simply insupportable. *See Twigg v. Norton Co.,* 894 F.2d 672, 674–75 (4th Cir.1990) (to warrant a new trial, movant must show reasonably genuine surprise, which necessarily was inconsistent with substantial justice, and resulted in actual preju-

dice). NHIG's argument that it was surprised by the Court's judgment is undermined by its own response to Katski's action. In both its pleadings, and in testimony presented by it at trial, NHIG seems to have anticipated Katski's charges against it. *Cf. Twigg*, 894 F.2d at 674 (movant demonstrated surprise in part where pleadings, interrogatories and direct testimony stated different theory of liability than that raised on cross examination of plaintiff). NHIG's answer to the Third Party Claim does not specifically address Katski's allegations of negligence, but rather contains only a general denial that there is any "coverage for subject loss." [2] Answer to Third–Party Complaint (Paper No. 31).

Additionally, at trial, NHIG seems to have anticipated that another's repair efforts might be responsible for the repair work negligence that Katski contended caused the engine damage. Skord, NHIG's expert witness, went to great lengths to demonstrate that the Hunter's damage was due to events not covered by the policy. Skord's testimony was not predicated upon only showing that Johnson & Towers was not negligent, but rather that the damage was also due to events outside policy coverage, i.e., gradual wear and tear or deterioration of the engine insulation lagging.[3] *Cf. Twigg*, 894 F.2d at 674.

■ NHIG's assertions of unfairness are equally insupportable. Rule 8 requires only a short and plain statement of the case. *See* Fed.R.Civ.P. 8; *see also Twigg*, 894 F.2d at 675. Katski met this burden. The Third Party Complaint clearly alleges that NHIG failed to pay for a loss covered by the insurance policy. Neither Katski's third party claim, nor NHIG's Answer to that claim, limit, in any way, the allegations of negligence to that only of Johnson & Towers. Indeed, Katski's third party claim states only that the damage to his yacht's engines is covered under his policy with NHIG.[4] Although Katski denied liability to Johnson & Towers based upon Plaintiff's alleged negligence, Katski did not state in the Third Party Claim that Plaintiff's negligence was the only basis for the insurance policy coverage.

If NHIG required more information to frame an answer it could have so moved. *See* Fed.R.Civ.P. 12(e). The end of a trial is not an appropriate time for NHIG to make a motion for a new trial that is in reality a motion for a more definite statement.

Simply because NHIG now claims, after its loss at trial, that it did not anticipate that the negligence that caused the damage was due to other repair people is not reason enough to grant a new trial. NHIG wrote the insurance policy. Presumably, it knew, or should have known, what types of damage were and were not covered by the policy. NHIG, knew or should have known, of these other repairs to Katski's vessel. NHIG should have anticipated therefore, that the damage to the vessel could have been caused by one of the other repair shops that worked on the engines. Moreover, the vessel's entire repair history was placed in evidence and discussed at exhaustive length at trial.

■ Therefore, NHIG knew, or should have known, that all Katski needed to show by a preponderance of the evidence was that

---

2. NHIG's argument appears to rest on a double standard for meeting pleading requirements, for NHIG requires much *more* specificity from Katski's pleadings than it provided in its own answer.

3. The Court notes that nowhere in NHIG's pleadings, or in this Motion, does it contend that it asked the Court for a continuance or objected to Katski's production of evidence demonstrating negligence on the part of other repair shops that worked on the vessel. As such NHIG may have waived its rights to ask for a new trial based on these grounds. *See Melanson Co. v. Hupp Corp.*, 391 F.2d 902 (3rd Cir.1968); *but see Twigg*, 894 F.2d at 675.

4. Count I of the Third Party Claim states, "NHIG has refused to pay the claims and has refused to defend Defendants in this action in breach of the terms of the policy." (Paper No. 23 at Para. 7). Similarly Count II states, "Katski and Hunter deny that they are liable to Johnson & Towers for the claims made. However, if either Katski or Hunter is found to be liable to Johnson & Towers as alleged in the Complaint, that liability is covered loss under the policy insured by New Hampshire Insurance Group." (Paper No. 23 at Para. 10).

the damage done to the engines was covered by the policy. He met this burden. The fact that Katski may not have demonstrated the exact cause of the physical abuse does not hamper his claim, for he established that the loss is within policy coverage. *See Gibbar v. Calvert Fire Ins. Co.*, 623 F.2d 41, 45–46 (8th Cir.1980). Therefore, NHIG's Motion for a New Trial is not supportable on these grounds.

■ Second, NHIG argues that the Court's findings of fact go against the weight of the evidence. As Third Party Plaintiff, Katski brought suit against his insurance company, NHIG, claiming that the damage done to his yacht was covered by his insurance policy and NHIG was, therefore, liable for the repairs.

NHIG denied that the repairs were covered by the insurance policy and accordingly denied all of Katski's damage claims. The policy states that it covers the "yacht along with its sails, machinery, furniture and other equipment of and in the vessel as is required aboard for the safety and operation of the vessel." *See* Defendants' Trial Exhibit 7 Insurance Policy Section "A" Para. 1. Without a doubt, this policy covers the yacht's engines being both machinery and required for the vessel's operations. Moreover, this section covers the lagging and the engine insulation as they are necessary for the safe operation of the vessel.

NHIG notes, however, that said coverage is limited by Section A, Para. 7(b) which excludes insurance coverage on items where the damage is due to "wear and tear, gradual deterioration [and] weathering." NHIG argues that the engine damage here at issue resulted from the normal wear and tear and gradual deterioration of both the lagging (the cloth which wraps around the insulation) and the engine insulation.

Katski responds that this damage is covered by Section A, Para. 6. Paragraph 6 concerns "Causes of Loss That Are Covered." It states in pertinent part:

(a) We will cover accidental direct physical loss or damage to the property insured from any external cause.

(b) We will also cover physical loss or damage caused by the following:

(2) Negligence of master, mariners, engines or pilots, provided such loss or damage is not due to a lack of diligence by [the policy holder].

(3) any hidden defect in the machinery ...

Katski maintains that negligence of others whom repaired the Hunter caused the damage and that this negligence is covered by one of several provisions in Para. 6. As a factual matter, therefore, this Court had to decide whether the insulation's damage was a covered loss under Para. 6 or was the result of wear and tear that, as stated in paragraph 7(b), is not a covered loss under the policy.

The cause of the damage to the engines is not in dispute. All of the professionals who examined the insulation and lagging concluded that the lagging came loose and the fibrous material that composes the insulation was ingested into the engines.

The Court found by a preponderance of the evidence, that Plaintiff, Johnson & Towers, was not responsible for the damage to the boat engines. However, Defendant, Katski, testified that numerous other companies had done repair work on the engines. Further, Defendant's experts testified that the time between the physical trauma to the insulation and the engine damage would have been six months.

This Court found by a preponderance of the evidence that the damage to the lagging and the engine insulation was due to physical abuse and not gradual deterioration or wear and tear. Further, this abuse to the engine insulation, this Court found, by a preponderance of the evidence, was not due to Katski's negligence.

These findings of fact are based on the following evidence. Katski presented the testimony of two expert witnesses, Commander Lynch and Dr. Allen, both of whom testified that the engine insulation does not wear out. Both testified that physical trauma could cause the lagging to tear and crush the fibrous material that composes the insulation. Once crushed, the insulation was then ingested into the engines, which all experts agreed caused the engine damage.

Commander Lynch has twenty years of Naval experience on ships, with a particular expertise in this type of engine insulation. Dr. Allen has a Doctorate in Aeronautical Engineering and Engineering. Both witnesses testified that the only causes of the failure of the lagging which would allow the dust to escape are physical trauma or submersion in water. Since the engine room never flooded, these experts testified that only physical trauma could have caused the lagging to fail and the insulation to crumble as it was compressed by the physical abuse. This expert testimony is further supported by the testimony from Johnson & Towers mechanics who repaired Katski's yacht engines; they testified that the lagging and insulation needed no maintenance.

Only the testimony of Skord, NHIG's marine surveyor, contradicts this conclusion. Skord testified that in his opinion, lagging has an expected useful life of three to ten years. While the Court found Katski's experts, on balance, to be more credible on the specific issue of the life expectancy of insulation and lagging, there was also other evidence that casts doubt on Skord's testimony.

Katski testified that the only portions of the lagging and insulation replaced were located on a horizontal section of pipe. This section, Katski testified, and the diagrams and photographs showed, presented a convenient foot rest for stepping on when leaving the engine room, or a seat when working on certain parts of the engine. None of the vertical portions of the lagging and insulation were replaced. Moreover, the Court examined the damaged and undamaged lagging and insulation. The replaced portions from the horizontal sections were crushed, while the portion from the vertical section was not. *See* Defendant's Trial Exhibits 20 and Third Party Defendant Trial Exhibit 4. If Skord were correct in his assessment of the useful life of lagging and insulation, the damage thereto should not have been confined, but would instead have been present in other areas besides those places that made convenient steps or seats.

Finally, there is direct evidence of physical trauma to the insulation. Katski presented photographs of the horizontal portion of the engine exhaust taken during boat repairs when they were performed by another yacht repair company. The photographs showed foot prints on the horizontal portions of the engine insulation system. Katski testified that there were at least eight major repair jobs done on the Hunter engines between 1986 and 1990. The repair work was done by a variety of yacht repair companies, any of whom may have stepped on the lagging and compressed the engine insulation.

The repairs done by yacht repair companies in January and March of 1990 may be the most likely culprits for causing the insulation, and ultimately, the engine damage.[5] Commander Lynch testified that it would have taken approximately six months between the time that the particles began to escape from the insulation until the engine began to show signs of damage. Six months after the January repairs, Johnson & Towers was asked by Katski to examine the engines and discovered the damage which is the subject of this suit. Again, Katski had photographs taken during the January 1990 repairs showing footprints on the engine exhaust where the insulation ultimately needed replacement.

The Court ruled that Katski was not a possible source of the damage. First, there is no evidence that he ever stepped or sat on the damaged parts and Katski testified that he did not. Second, although Katski constantly worked in the engine room, everyone who testified, including Johnson & Towers' employees, stated that Katski took great measures to keep his engine room clean and his yacht in good condition.

Given this evidence, the Court found by a preponderance of the evidence that the lagging and engine insulation did not suffer from wear and tear or gradual deterioration. Instead, the Court found by a preponderance of the evidence that physical abuse caused the lagging that covered the insulation to separate. The physical abuse, the Court

---

**5.** Testimony reveals that the Hunter was subject to repairs not only in Florida but in transit on the inland water way from Florida to Maryland, at which time the engines and lagging were exposed.

found had compressed the insulation, thereby causing it to break off in particles which were then ingested by the engine, causing the engine damage.

▉ NHIG continues to argue that the loss was not covered because it must have occurred partially by wear and tear. However, as discussed above, this Court found ample cause to hold that the physical trauma due to negligent repair caused the damage.

Having established that physical trauma, not gradual deterioration, caused the insulation and ultimate engine damage, the Court then considered whether this physical abuse was covered by the insurance policy. If the damage was a covered loss, then NHIG was responsible under the policy for at least the invoice amount. If this type of damage was not covered, then NHIG was not liable at all to Katski. The Court turned, therefore, to an examination of Katski's policy.

▉ An insurance policy is a contract and is to be interpreted as any other contract, with the terms given their customary and ordinary meanings. *See Highlands Ins. Co. v. Gerber Products Co.*, 702 F.Supp. 109 (D.Md.1988); *Chicago Ins. Co. v. Pacific Indemnity Co.*, 502 F.Supp. 725 (D.Md.1980); *Bankers & Shippers Co. v. Urie*, 38 Md.App. 232, 380 A.2d 243 (1977). Moreover, an insurance policy is to be construed as a whole with the specific clauses qualifying the general clauses. *Fed. Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 341 A.2d 399 (1975). Finally, where policy terms are ambiguous, the Court must consider the extrinsic evidence of the parties' intent and usage. *Southern Maryland Agricultural Assn. v. Bituminous Casualty Corp.*, 539 F.Supp. 1295, 1299 (D.Md. 1982). Should the ambiguity still be unresolved, then the "policy is construed against the insurer, as the party which drafted the agreement, and in favor of coverage for the insured." *Id.*

▉ In the instant case, Katski claims coverage under several provisions of paragraph 6 of Section "A" of the policy. NHIG denies coverage as being excluded under Section "A" paragraph 7(b). In addition, NHIG contends that the negligence of other repairmen is not covered within any of the provisions in Section "A" paragraph 6 of the policy.

The Court, however, has already determined that physical abuse, not wear and tear, caused insulation damage. The policy exclusions contained in Section "A" paragraph 7(b) do not apply. *See Cyclops Corp. v. Home Insurance Co.*, 352 F.Supp. 931, 936 (W.D.Pa.1973) ("wear and tear" defined as that ordinary and natural deterioration or abrasion that an object experiences by its *expected* contacts during its *natural* life expectancy). Since the lagging and insulation were expected to last for decades, exceeding even the life of the yacht, and since the physical abuse resulting from stepping and sitting on the insulation and lagging was not one of the anticipated contacts, the policy exclusions to which NHIG points do not apply. Having established that the damage to the Hunter is within its policy coverage, NHIG is liable to Katski for the repair invoice amount of $27,469.25. *See* Plaintiff's Exhibit 3.

Both the weight of the evidence and the law favor Katski. NHIG's Motion for a new trial is, therefore, denied.

### III. *NHIG's Motion to Amend Judgment*

In addition to finding that NHIG was responsible for covering the cost of the Johnson & Towers' repairs to Katski's vessel, the Court also found that NHIG was liable for certain of Katski's attorney's fees. Specifically, the Court found that Katski should recover his attorney's fees incurred in the Johnson & Towers' action and for bringing the third party claim against NHIG. Katski sought, but did not receive, the Johnson & Towers' attorney's fees and service costs for which he was found liable under his contract with Johnson & Towers.

NHIG moves to amend judgment to exclude all of the attorney's fees that this Court awarded to Katski against NHIG. NHIG bases its request on three grounds. First, NHIG argues that it is not responsible for Katski's attorney's fees in the Johnson & Towers action, because under the insurance policy's terms, NHIG had no duty to defend Katski. Second, NHIG argues that to the

extent it was obligated to defend Katski in his suit with Johnson & Towers, NHIG was relieved of that burden by this Court's finding that Katski failed to mitigate damages *i.e.*, that Katski could have paid for the repairs. Third, NHIG argues that apart from obligations contained in the insurance contract, it has no duty under Maryland law to defend or pay attorney's fees. Each of these arguments will be considered *seriatim*.

## A. *Duty to Defend*

▮ At the outset, the Court notes that in Maryland the general rule is that the costs and expenses of litigation, other than the usual and ordinary court costs, are not recoverable in an action for damages. *McGaw v. Acker, Merrall, & Condit Co.*, 111 Md. 153, 160, 73 A. 731 (1909). This being said, however, a party may recover attorney's fees authorized by contract. *See Sullivan v. Easco Corp.*, 662 F.Supp. 1396 (D.Md. 1987). Maryland courts are not hostile to the principle that the parties themselves may shift by contract the burden of litigation expenses. *Addressograph–Multigraph Corp. v. Zink*, 273 Md. 277, 286–89, 329 A.2d 28 (1974).

NHIG asserts that under the policy terms, it is not obligated to pay for attorney's fees generated by Katski in defending his suit with Johnson & Towers. NHIG's contention is predicated upon its reading of two separate provisions of the insurance policy.

First, NHIG argues that the only claims for which legal representation is required are those claims covered under "Protection Indemnity," Section "B" paragraph 1, "Claims That Are Covered." NHIG contends that because the dispute between Johnson & Towers and Katski does not fall under one of the covered claims of paragraph 1 of Section "B", the policy does not require NHIG to provide legal representation.

▮ This Court disagrees. This Court already found that the damage to Katski's engines is a loss covered by the policy under Section "A" "Hull Insurance," paragraph 6 "Causes of Loss That Are Covered." In effect, what NHIG is arguing is that it is responsible only for legal expenses of cov-

ered claims, but not covered losses. NHIG's reading of its contract obligations is flawed, in that it attempts to make the payment of a policyholder's legal expenses dependant upon whether that expense is defined as a covered claim or a covered loss. NHIG cites no law, insurance policy provisions, or even public policy, in support of its position that there should be a difference between a covered loss and a covered claim. In this Court's view, NHIG's unsupported assertion is a difference without legal or logical distinction.

Even if correct, NHIG's argument fails to account for other policy provisions that create a duty for NHIG to defend. Under the policy's "General Conditions" paragraph 6, "When We Will Pay For Losses," the policy states that NHIG will pay for covered losses. Moreover, paragraph 7, "Cooperation With Us," states that in the event of a loss, the policyholder is to cooperate fully with NHIG, and if sued and if NHIG approves, NHIG will pay the costs of defending in the suit. In this case, the Court found that the damage to Katski's engines was a covered loss, therefore, NHIG should either have paid the Johnson & Towers repair bill or paid for Katski's defense. NHIG did neither, despite Katski's requests.

As for the specific limitations on coverage raised by NHIG, namely, that only claims and not losses trigger NHIG's legal obligations, the Court disagrees. In the same Section "B", "Protection & Indemnity," cited by NHIG, paragraph 3, "Legal Representation" contains a broad and sweeping statement, "If your liability is contested, we will pay the cost and expense of your defense."

In attempting to interpret these somewhat conflicting policy provisions, Maryland law provides an interpretive guide. As noted previously, an insurance policy is to be construed as a whole with specific clauses qualifying the general provisions *Fed. Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 341 A.2d 399 (Md.1975). In this policy, the two specific provisions in Section "B", "Protection & Indemnity" modify the policy's "General Conditions." Even if NHIG's interpretation of Section "B", paragraph 1 is correct, that its burden of defending extends only to covered

claims, not covered losses. NHIG is still required to defend.

■ Under the best reading for NHIG, the policy is ambiguous, appearing to modify the "General Conditions" both to create and limit NHIG's duty to defend. Where a policy, however, is ambiguous and no extrinsic evidence of the parties' intent and usage of the provisions exists, the "policy is construed against the insurer, as the party which drafted the agreement, and in favor of coverage for the insured." *Southern Maryland Agricultural Assn. v. Bituminous Casualty Corp.*, 539 F.Supp. 1295, 1299 (D.Md.1982). This authority then favors Katski and, therefore, under the insurance policy's terms, NHIG had a duty to defend.

This conclusion is further supported by other contract law principles. Normally, a party is entitled to foreseeable damages.

> The rule is that the amount of damages recoverable for breach of contract is such as may reasonably be considered in arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as a probable result of the breach of it.

*Cohen v. American Home Assurance Co.*, 255 Md. 334, 362, 258 A.2d 225 (Md.1969) (citing *Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Messenger*, 181 Md. 295, 300–01, 29 A.2d 653 (1943)). Since the policy contains many references to paying for the cost of litigation, these costs were foreseeable—within the contemplation of both parties at the time of the insurance policy contracts's making. *Messenger*, 181 Md. at 301, 29 A.2d 653.[6] Moreover, even NHIG admits that legal expenses were pay-

able under some circumstances in that the policy explicitly authorizes the payment of some legal fees. *Id.*

■ Second, NHIG argued at the hearing, that even if the insurance policy creates a duty to defend, that duty does not apply to this case because Katski's suit with Johnson & Towers was over obligations separately incurred by Katski. According to NHIG, Section "B" of "Protection & Indemnity," precludes Katski's recovery of these attorney's fees because paragraph 7(b) of that section states that the policy does not cover "[l]iability assumed under any [other] contract or agreement." NHIG contends that as Johnson & Towers brought suit against Katski for breach of his repair contract, NHIG is not liable for these obligations that were assumed independently by Katski.

The Court disagrees. While the suit between Katski and Johnson & Towers ultimately assumed the form of an action in contract, Katski's repair contract with Plaintiff was not the genesis of NHIG's obligation to Katski. The Court found that the policy covered the engine damage to Katski's vessel, as that damage was caused by negligent repairs. NHIG's obligation to pay for the cost of the vessel's repairs and pay Katski's attorney's fees in the action with Johnson & Towers grows out of the insurance company's breach of its contractual obligations with Katski, as opposed to Katski's repair and finance contracts with Johnson & Towers. Therefore, NHIG's reliance on this section in the insurance policy as a shield against its responsibility for the repair costs and legal fees is misplaced.

The section to which NHIG points to did, however, prevent Katski from recovering certain other expenses. This Court did refuse to grant Katski's request for Johnson &

---

6. In awarding Katski's fees for defending in Johnson & Towers' litigation, the Court is not transgressing the "American Rule" that normally requires each party to bear the cost of their own attorney expenses. *See Collier v. Md. Individual Practice Assoc., Inc.*, 327 Md. 1, 10–17, 607 A.2d 537 (1992). These fees were costs that arose as a consequence of the suit between Johnson & Towers and Katski and thus were foreseeable costs of NHIG's breach of its contract obligations with Katski. These fees may also be recoverable as collateral litigation because of "the wrongful acts

of the defendant [NHIG] ha[ve] involved the plaintiff [Katski] in litigation with others, or placed him in such relation with others as make it necessary to incur expense to protect his interest, ..." *McGaw*, 111 Md. at 160, 73 A. 731; *see also Estate of Coppersmith v. Blue Cross & Blue Shield*, 177 A.D.2d 373, 576 N.Y.S.2d 126 (1991).

Discussion of Katski's recovery of his attorney's fees in his suit against NHIG and the "American Rule" is contained *infra*. *See also Collier v. MD Individual Practice Assoc., Inc.*, 327 Md. 1, 10–17, 607 A.2d 537 (1992).

Towers' attorney's fees and certain service charges that were incurred by him as a result of his separate finance agreement with Johnson & Towers. *Johnson & Towers Baltimore, Inc. v. Vessel Hunter, et al.*, 802 F.Supp. 1343. These costs were excluded by the Court because they were independent of, and Katski's obligation to pay them was incurred prior to, his insurance policy. As such, Section "B" paragraph 7(b) prohibited recovery of these costs under the insurance policy.[7]

The Court also granted Katski the Rule 54(d) costs assessed assertions by Johnson & Towers. *Johnson & Towers Baltimore, Inc. v. Vessel "Hunter", et al.*, 802 F.Supp. 1343. As with attorney's fees, these costs were a foreseeable expense arising from NHIG's breach.[8]

### B. *Mitigation*

NHIG's second argument against Katski's recovery of attorney's fees in the Johnson & Towers suit is based upon the Court's finding that Katski should have mitigated damages. While the first set of NHIG's arguments against Katski's fee recovery are premised upon its construction of the policy provisions, this second argument attempts to shield NHIG from liability using contract law principles not explicitly spelled out in the policy itself.

It should be noted that this Court's finding as to mitigation was raised in the context of Katski's request that NHIG pay those Johnson & Towers' attorney's fees, finance charges and costs assessed against Katski as a result of his separate finance agreement with Johnson & Towers. The Court rejected Katski's request. Although these costs could possibly be considered as a cost of collateral litigation, these costs were not foreseeable in the sense that the policy precludes their recovery. *See* Defendant's Trial Exhibit 7, Insurance Policy, Section B, paragraph 7(b). It was this provision, coupled with Katski's failure to mitigate, that led the Court to conclude that Katski was not entitled to these damages.

The Court rejects NHIG's argument that Katski's failure to mitigate prevents his recovery of attorney's fees. First, unlike the service costs for which Katski is liable to Plaintiff, the insurance policy does not prevent recovery. Second, both Katski and NHIG entered this dispute with "unclean hands." Both parties could have mitigated damages. If NHIG did not wish to incur Katski's attorney's fees in his defense against Johnson & Towers, then NHIG could have paid the claim. Further, if NHIG did not believe that it was liable for the damage to Katski's vessel, NHIG could have brought a declaratory judgment action. *See Bankers & Ship Ins. v. Electro–Enterprises*, 287 Md. 641, 415 A.2d 278 (1980).

Instead, NHIG gambled. It gambled and lost. The damage to Katski's vessel is a covered loss and so NHIG is responsible for Katski's attorney's fees in defending against Johnson & Towers. NHIG lost control of this action by voluntarily breaching the policy and walking away from Katski, leaving him to fend for himself. Under the policy's terms, NHIG could have assumed Katski's rights and settled. NHIG did not pursue this strategy, however, and it lost.

The choice was NHIG's, and NHIG chose poorly. NHIG's choice was poor because it was, or should have been, aware of its obligations under Maryland common law and under a contract it authored. *See U.S.F. & G. v. U.S. Fire*, 90 Md.App. 327, 346, 600 A.2d 1178 (1992); *Continental Cas. v. Board of Education*, 302 Md. 516, 528, 489 A.2d 536 (1985); *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407–08, 347 A.2d 842 (1975). NHIG must now live with the consequences of its decision.

### C. *Duty Under Maryland Common Law*

NHIG also asserts that Maryland common law does not provide a basis for either Katski's recovery of attorney's fees in the John-

---

7. In addition, the Court did not allow recovery because Katski's failure to mitigate, coupled with the fact that the policy precluded recovery, outweighed any consideration that the costs could be awarded as a collateral litigation expense.

8. These 54(d) costs may also be recoverable as a collateral litigation expense. *See McGaw*, 111 Md. at 160, 73 A. 731.

son & Towers action, or his recovery of fees in his third party claim against NHIG. This argument is without merit.

As already noted, the general rule is that parties are responsible for the expense of their own attorney's fees. *Collier*, 327 Md. at 10–17, 607 A.2d 537; *McGaw*, 111 Md. at 160, 73 A. 731. The burden of the payment of attorney's fees may be shifted by contract. *Zink*, 273 Md. at 286–89, 329 A.2d 28. The awarding of Katski's attorney's fees in defending the Johnson & Towers action is, for example, supported by NHIG's obligations under the insurance policy contract. With respect to awarding Katski's attorney's fees in his third party claim against NHIG, a different rationale must prevail in order for Katski to receive these damages.

Although these expenses could just as easily be awarded as foreseeable damages intended to protect a promisor's expectation interest, the "American rule," absent a different common law principle or contract provision, stands as a barrier to their recovery. *Collier*, 327 Md. at 12, 607 A.2d 537.

> From the standpoint of a strict application of the American Rule, there is no logical reason why the successful plaintiff's action on a liability insurance policy for breach of a promise to defend, or to pay the cost of defense, should include counsel fees in prosecuting the breach of contract action, when successful plaintiff's actions for other breaches of insurance contracts, or for breaches of other contracts, do not ordinarily include those counsel fees.

*Id.* at 16–17, 607 A.2d 537.

■ Maryland common law, however, does provide such an exception to the "American rule" for an insured's legal fees incurred in bringing an action against the insurer to establish policy coverage *Id.* at 17, 607 A.2d 537.

> If an insurer breaches its contractual duty to defend a claim that falls within or potentially falls within the policy's coverage the insurer is liable for attorney's fees incurred in the underlying defense of that claim, as well as in a declaratory judgment

action which determines the coverage and the duty to defend.

*American Home Assurance v. Osbourn*, 47 Md.App. 73, 84, 422 A.2d 8 (1980); *see also Bankers & Ship Ins. Co. of New York v. Electro Enterprises*, 287 Md. 641, 646–49, 415 A.2d 278 (1979); *Cohen*, 255 Md. at 360–62, 258 A.2d 225; *Messenger*, 181 Md. at 300–02, 29 A.2d 653. The instant case satisfies the conditions explicitly stated in *Osbourn*. This Court found by a preponderance of the evidence presented at trial that Katski's claim fell within his policy coverage and as such, NHIG had a duty to defend. NHIG is, therefore, liable for Katski's attorney's fees in bringing the third party claim under this line of reasoning. *Id.* Equally true is that this reasoning supports Katski's claim for attorney's fees in the Johnson & Towers action.

■ NHIG raised one final argument based upon Maryland common law against awarding Katski's fees for his third party claim. At the hearing, but not contained in any of its papers, NHIG claimed that attorneys fees are only awarded when an insurer breaches its obligations to defend in bad faith or is unreasonably litigious. Under this rule, NHIG would not be responsible for attorneys fees because this case presented a close factual dispute wherein NHIG claimed it was not unreasonably litigious in refusing to recognize the damage to Katski's vessel's engines as a covered loss. NHIG cited authority for this position. *U.S.F. & G.*, 90 Md.App. at 347–48 n. 11, 600 A.2d 1178; *Maryland Auto. Ins. Fund v. Sparks*, 42 Md.App. 382, 395–96, 400 A.2d 26 (1979).

*U.S.F. & G.* provides the most detailed analysis in support of NHIG's position that fees are awarded only in cases where the insurer's refusal to defend constitutes bad faith. The Maryland Court of Special Appeal's analysis appears to rest upon the fact that in certain Maryland cases the word "unjustified" or "wrongful" is used to describe when an insurer must pay an insured's attorney's fees when it has refused to defend a loss properly covered by the insurance policy. *U.S.F. & G.*, 90 Md.App. at 348 n. 11, 600 A.2d 1178.[9] The issue is, therefore,

---

9. "Maryland law falls closest to [the courts that allow recovery if it can be shown that the insurer

whether under Maryland law the terms "un-justified" or "wrongful" are synonymous with bad faith; or whether these terms apply to any situation wherein an insurance company does not pay a claim that was properly covered under the insurance policy. It is an issue of whether "unjust" or "wrongful" modifies the phrase "refusal to defend," or the whether a refusal to defend a covered claim is always "unjustified" or "wrongful."

This Court finds that Maryland common law prefers the latter interpretation. First, not even all of the cases cited in *U.S.F. & G.* use the terms "unjustified" or "wrongful" in describing when an insurer must pay an for insured's attorney's fees. *Cf. Bankers & Shippers Ins. Co. v. Electro Enter.*, 287 Md. 641, 648, 415 A.2d 278 (1980) (no use of the term "unjustified" in describing when an insurer must pay insured attorney's fees); with *Maryland Auto. Ins. Fund v. Sparks*, 42 Md.App. at 395–96, 400 A.2d 26 ("however, such fees and costs may be recoverable where an insurer has unjustifiably refused to defend its insured.").[10] As such, the contention that the terms "unjustified" or "wrongful" are synonymous with "bad faith" would invariably yield very inconsistent authority and confusing precedent even within the same case.

Second, and perhaps more importantly, the most recent authority from Maryland's highest court does not condition the award of attorney's fees in this situation on an insurer's bad faith. *Collier*, 327 Md. at 10–17, 607 A.2d 537.

Third, it is not just an appeal to authority, but also the appeal of reason that supports

this Court's interpretation. The *Collier* Court indicated that the awarding of attorney's fees is an *exception* to the American rule. *Id.* at 17, 607 A.2d 537. If attorney's fees could be awarded only where an insurer acts in bad faith, then there would be no need for this exception. Under Maryland Rules, courts already have the authority to award attorney's fees where an action is maintained "without substantial justification" or in "bad faith." *Ann. Code of Md. Rules* 1–341; *Legal Aid Bureau, Inc. v. Farmer*, 74 Md.App. 707, 539 A.2d 1173 (1988).

Moreover, even the *U.S.F. & G.* court recognized the broad duty of an insurer to defend. *U.S.F. & G.* 90 Md.App. at 346, 600 A.2d 1178. This broad duty certainly implies the recovery of attorney's fees in order to give a proper remedy to the insured's right to have liability arising from covered losses defended. Thus, for the reasons stated herein, the Court grants both Katski's attorney's fees and costs in Johnson & Towers' action against him and his legal expenses and costs in bringing his third party claim against NHIG.[11]

## IV. *Reasonableness of Fees*

At the Court's direction, Katski submitted a petition for legal expenses and costs claimed. NHIG contests the amount of the legal fees and costs.

 Under Maryland law, a party may recover attorney's fees where authorized by contract. *See Sullivan v. Easco Corp.*, 662 F.Supp. 1396 (D.Md.1987). When as here, the fee provision, and in this case, common law, is not explicit, "reasonable at-

acted in bad faith, fraudulently, unreasonably, or was stubbornly litigious]; when an insured in Maryland initiates a declaratory judgment action against an insurer in Maryland, the insurer is required to pay the insured's expenses in that action where the refusal to defend is *unjustified." Id.* at 348 n. 11, 600 A.2d 1178 (emphasis in original).

**10.** Some cases even go so far as to either not use these terms but then cite cases where the term "unjustified" is used, or use the terms and cite cases for authority where the term is not used. *See e.g. American Home Assurance v. Osbourn*, 47 Md.App. 73, 83, 422 A.2d 8 (1980) (no use of the word "unjustified" but cites *Sparks*, 42 Md.App.

at 400, 400 A.2d 26); *Northern Assurance Co. v. EDP Floors*, 311 Md. 217, 232, 533 A.2d 682 (1987) (uses "wrongfully" to describe insurer's refusal to defend, but cites *Electro Enter.*, 287 Md. at 648, 415 A.2d 278, a case where the term is not used).

**11.** NHIG also claims that Katski's motion for fees and costs is untimely under Local Rule 109.1 because Katski submitted his petition twenty days after the Memorandum and Order was signed. Under the Local Rules, however, the clock does not begin until either the Motion for a New Trial is ruled upon, or there is an Entry of Judgment. Neither has happened here. This claim is groundless.

torneys' fees" must be determined by the Court. *Id.* at 1404. The party requesting fees must offer documentation of the hours worked and offer an explanation of how the time was spent. *Id.* at 1404.

Beyond the examination of hours and rate, there is not much guidance on what constitutes a reasonable fee. *See Sullivan,* 662 F.Supp. at 1404. However in other legal contexts, the issue of attorney's fees and standards for judging those fees has been extensively outlined. *See e.g., Barber v. Kimbrells, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.) *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) (attorney fee standards for prevailing plaintiff in a civil rights case); *Deleon Enterprises, Inc. v. Gary Hart & Assoc., Ltd.,* 92 Md.App. 399, 419, 608 A.2d 828 (1992) (factors court should consider when awarding attorney fees against a party who has maintained an action in bad faith).

Factors the Maryland courts consider in determining the amount of fees that are reasonable in an action under Rule 1–341 include labor, novelty, and difficulty of the questions involved, skills, time, benefit to client, financial resources of the parties, local customary fee for similar services. *Head v. Head,* 66 Md.App. 655, 659, 505 A.2d 868 (1986). In this case, Katski has submitted a legal bill of $35,509.50 and a bill of costs for $10,205.49. NHIG presents only the most conclusory assertions in attacking the reasonableness of the attorney's fees claimed by Katski.

In this case, extensive discovery was conducted by both sides. Katski's attorneys had to maintain two cases: Katski's defense and counterclaim against Johnson & Towers and its claim against NHIG. At trial, NHIG contested, without adequate explanation, not only the extent of the policy's coverage, but rather surprisingly, even the existence of the written policy, although the written policy was entered in evidence. The Court declines to comment on these claims or question the judgment of the attorneys' litigation strategy. Each side pursued the legal arguments it thought best in light of the circumstances it faced. Now, NHIG, as per contract and common law obligations, must pay the bill and suffer the consequences for the choices it freely made to enter the policy agreement, breach the agreement and litigate this case.

The Plaintiff has provided extensive documentation on the hours expended and type of work done. The requested fees are reasonable in light of the issues the Plaintiff faced, the work performed and the papers each side filed. Therefore, the Court awards Plaintiff its *entire attorney fee request of $35,509.50. See* Defendants' Petition for Allowance of Attorney's Fees and Costs.

As to Katski's Bill of Costs, this Court leaves it to the Clerk of the Court to determine which costs are allowable under Rule 54(d). Katski is to recover for two distinct types of costs. First, Katski is to recover those costs that are appropriately categorized as Rule 54(d) costs that this court found Katski liable to Johnson & Towers. While Johnson & Towers recovered costs pursuant to its contract with Katski, not all of these costs would have been allowable under Rule 54(d). The Clerk of the Court is to determine which of those costs are allowable and therefore recoverable from NHIG.

Second, Katski is to recover his allowable Rule 54(d) costs in maintaining his third party claim against NHIG. Katski claims that the sum of all of these costs is $10,205.49. The clerk will determine the exact amount to be awarded.

A separate Order shall issue.