CATALINA ENTERPRISES, INCOR-
PORATED PENSION TRUST,
Plaintiff–Appellant,

v.

HARTFORD FIRE INSURANCE
COMPANY, Defendant–
Appellee,

and

Jennings Insurance Associates,
Incorporated, Defendant.

No. 95–1015.

United States Court of Appeals,
Fourth Circuit.

Argued May 3, 1995.

Decided Oct. 17, 1995.

**64**

**ARGUED:** Max Higgins Lauten, Kramon & Graham, P.A., Baltimore, MD, for Appellant. Craig David Roswell, Niles, Barton & Wilmer, Baltimore, MD, for Appellee. **ON BRIEF:** Thomas H. Bornhorst, Baltimore, MD, for Appellant. V. Timothy Bambrick, Niles, Barton & Wilmer, Baltimore, MD, for Appellee.

Before ERVIN, Chief Judge, and MURNAGHAN and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Chief Judge ERVIN and Judge MURNAGHAN joined.

## OPINION

NIEMEYER, Circuit Judge:

Late on May 9 or early on May 10, 1992, a fire began in a warehouse on Quad Avenue in Baltimore, Maryland, owned by Catalina Enterprises, Inc. Pension Trust. The fire caused approximately $541,000 in damage. When Catalina presented its proof of loss to its insurer, Hartford Insurance Company, Hartford Insurance denied coverage because, at the time of the fire, the warehouse had been "vacant" for almost five months, and the applicable insurance policy excluded coverage for vacant buildings. Catalina filed a breach of contract suit against Hartford Insurance, and the district court granted Hartford Insurance's motion for summary judgment. On appeal, Catalina contends that the district court misconstrued the vacancy exclusion. We disagree and therefore affirm.

I

At the time of the fire, Catalina's warehouse was not occupied by any tenant, the last tenant having left in December 1991, about five months earlier. That tenant had stored unprocessed pepper in the warehouse for the McCormick spice company. After the last tenant left, the heat for the warehouse and all but two circuit breakers were turned off. The two circuit breakers left on were for lights in the office area and for the alarm system. Later, but before the fire, Catalina also deactivated the alarm system.

When the fire began, the only contents in the Quad Avenue warehouse were one piece of scaffolding and one hand truck. The hand truck was a hydraulic, hand-operated pallet truck that had been left on the premises by the previous tenant. The scaffolding, which belonged to Catalina, was a rolling scaffolding, approximately 6 to 8 feet wide with a height of 18 to 20 feet. The warehouse also included a small office area, which at the time of the fire contained only a small work table. The work table apparently belonged to Catalina since the last tenant had removed all of its furniture from the office area when it left. The office contained no business records or business supplies.

The Hartford Insurance policy in effect when the warehouse caught fire contained an exclusion for losses occurring while the building was vacant if the building had been continuously vacant during the previous 60 days. The exclusion reads:

*Vacancy or Unoccupancy.* This Company shall not be liable for loss occurring while a described building, whether intended for

occupancy by owner or tenant, is vacant beyond a period of 60 consecutive days. "Vacant" or "vacancy" means containing no contents pertaining to operations or activities customary to occupancy of the building, but a building in process of construction shall not be deemed vacant.

Relying on this exclusion, Hartford Insurance denied liability for the fire loss.

When Catalina filed suit for breach of the insurance contract, Hartford Insurance filed a motion for summary judgment. Granting the motion, the district court concluded that "[b]y any reasonable interpretation of the policy language, the warehouse had been 'vacant' for 60 days prior to the fire." In reaching its conclusion that Catalina's building had been "vacant" within the meaning of the policy, the district court referred to undisputed record evidence that (1) no tenant had occupied the building from December 17, 1991, until the fire; (2) the only non-fixtures that remained in the warehouse part of the building after the last tenant left were a piece of scaffolding owned by Catalina and a hand truck abandoned by the previous tenant; (3) with the exception of one small work table owned by Catalina, the office area of the building contained no furniture and no business records or supplies; (4) the building's alarm system was deactivated and its heat and electricity (except for the lights in the office area) turned off; and (5) the building was not in the process of construction and only two minor repairs had been completed on it while it was vacant.

On appeal, Catalina does not contest any of the facts relied on by the district court. Rather, it argues that summary judgment for Hartford Insurance was improper as a matter of law.

## II

The sole issue presented for our consideration is whether the clause in Hartford Insurance's fire insurance policy excluding coverage for buildings that are vacant for more than 60 days, where "vacant" means "containing no contents pertaining to operations or activities customary to occupancy of the building," denies Catalina coverage. The parties agree that because this is a diversity case, Maryland law governs the policy's construction.

Under Maryland law, insurance policies are interpreted in the same manner as contracts generally; there is no rule in Maryland that insurance policies are to be construed most strongly against the insurer. *See Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 5, 607 A.2d 537 (1992). The "primary purpose" in construing insurance contracts, like all contracts, is to ascertain and give effect to the intentions of the parties at the time of contracting. *See Schuler v. Erie Ins. Exch.,* 81 Md.App. 499, 505, 568 A.2d 873, *cert. denied,* 319 Md. 304, 572 A.2d 183 (1990); *Aragona v. St. Paul Fire and Marine Ins. Co.,* 281 Md. 371, 375, 378 A.2d 1346 (1977). To ascertain the parties' intent, the court must "construe the instrument as a whole." *Collier,* 327 Md. at 5, 607 A.2d 537. In addition to the contractual language, the court may look to the character of the contract, its object and purposes, and the factual circumstances of the parties at the time of execution. *Id.* Clear and unambiguous language, however, must be enforced as written and may not yield to what the parties later say they meant. *Board of Trustees of State Colleges v. Sherman,* 280 Md. 373, 380, 373 A.2d 626 (1977) ("where a contract is plain and unambiguous, there is no room for construction"). Unless there is an indication that the parties intended to use words in a special, technical sense, the words in a policy should be accorded their "usual, ordinary, and accepted meaning." *Bausch & Lomb, Inc. v. Utica Mutual Ins. Co.,* 330 Md. 758, 778, 625 A.2d 1021 (1993). "A word's ordinary signification is tested by what meaning a reasonably prudent layperson would attach to the term." *Id.*

Catalina's argument focuses on the words "no contents" in the policy's definition of "vacant." Catalina urges a strict, literal reading of the words "no contents" so that the presence in the warehouse of a single object or item, no matter how small or insignificant, would render a building not vacant. While the object or item must "pertain[ ] to operations or activities customary to occupancy," Catalina contends that this language

only means that the object or item must be one that is customarily found on the property when it is occupied. Applying this interpretation to the instant case, the presence of any one of the three items found on Catalina's property at the time of the fire—the scaffold, the hand truck, or the table—would be enough to avoid the vacancy exclusion because each of these items is customarily found on the premises when it is occupied.

Catalina concedes that its interpretation places somewhat of a strain on what people ordinarily think of as a "vacant" building. But Catalina argues that Hartford Insurance chose to use the words "no contents" in its definition of "vacant" and that the author of the insurance contract is bound by the language it selects, no matter how disadvantageous that language may be. *See C & H Plumbing & Heating, Inc. v. Employers Mut. Cas. Co.,* 264 Md. 510, 512, 287 A.2d 238 (1972) (court may not relieve party from term just because it is disadvantageous to that party). Indeed, Hartford Insurance could just as well not have defined the term "vacant" in its policy, in which case we would be bound to implement the ordinary meaning of the term. But given the facts in this case, Catalina argues, the court is bound by the particular wording chosen by Hartford Insurance. *See Valliere v. Allstate Ins. Co.,* 324 Md. 139, 142, 596 A.2d 636 (1991) (when insurance policy defines term in manner different from ordinary understanding of that term, policy definition must control).

■ Although Catalina correctly recites various interpretive principles, it fails to recognize others with which they must be harmonized to reach a rational result. Pressing the phrase "no contents" to the extreme urged by Catalina would for all practical purposes eliminate the coverage exclusion from the policy. Virtually no building could be considered vacant if the notion of vacancy is defeated by the existence of a paper clip, a stray pencil, or a light bulb. Read in its entirety, the language of the exclusion does not convey this intent. *See Teamsters Local 639 Employers Health Trust v. Reliable Delivery Serv., Inc.,* 42 Md.App. 485, 488–89, 401 A.2d 191 (Md.App.1979) (terms of insurance contract must be read in context of entire contract, not according to any single clause, phrase, or section). It is axiomatic under Maryland law that a court should avoid reading a contract in a way that produces an absurd result, especially when a reasonable interpretation is available. *See Ensor v. Wehland,* 243 Md. 485, 492, 221 A.2d 699 (1966) (citing *Gibbs v. Meredith,* 187 Md. 566, 570, 51 A.2d 77 (1947)); *see also DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 721, 475 A.2d 454 (1984) ("A strained or unreasonable construction of the policy language should not be indulged in."); *Canaras v. Lift Truck Servs., Inc.,* 272 Md. 337, 357, 322 A.2d 866 (1974) (when provision is susceptible to more than one meaning, a fair and reasonable construction of contract should always be favored over one that leads to harsh and unreasonable result).

Reading the exclusion in this case naturally and in its entirety, we find that the phrase "no contents" is qualified by the clause that follows it—"pertaining to operations or activities customary to occupancy of the building"—so that the vacancy exclusion does not mean that the building must be devoid of any contents, however insignificant. Rather, the contents must be of a type indicative of operations or activities that ordinarily occur when the building is occupied. In other words, the exclusion means that a building is vacant when it contains nothing in it to indicate that the building is occupied or being used for the purpose for which it normally is used when occupied.

The reason for vacancy exclusions in fire insurance policies is obvious: empty buildings without occupants or activities pose increased fire risks. When a building is not in use, it is more likely that potential fire hazards will remain undiscovered or unremedied. Chances are also greater that a fire in a vacant building will burn for a longer period and cause greater damage before being detected. When an empty building is destroyed by fire, moreover, the question is raised more frequently whether the building was intentionally destroyed to avoid further economic loss. For all these reasons, insurance companies consider insuring vacant buildings more risky, and accordingly, charge greater premiums to cover such risk. Unless

a policy intends to include the risk of insuring a vacant building, we must, when interpreting an exclusion for vacant buildings, remember the broader intention of the parties. *See Parker v. State Farm Mut. Auto. Ins. Co.,* 263 Md. 206, 216, 282 A.2d 503. (1971) (insurance carrier that has contracted to underwrite specific coverage should not be expected to assume liability for risk specifically excluded by policy).

In this case the Quad Avenue warehouse was customarily used for industrial storage. Accordingly, it can only be found not vacant if its contents indicate that it is currently being used by an industrial company for storage. No reasonable person would believe that anyone was currently using the Quad Avenue warehouse for storage based on the presence of one non-motorized hand truck and one piece of scaffolding when the building was otherwise completely empty. This is especially true in light of all the other facts the district court considered.

Several courts in other jurisdictions have construed insurance policies with definitions of "vacant" identical to that used by Hartford Insurance. Most of the cases join us in rejecting Catalina's extreme interpretation by focusing on the phrase "pertaining to operations or activities customary to occupancy of the building" that qualifies the words "no contents." In *Cameron v. Frances Slocum Bank & Trust Co.,* 824 F.2d 570 (7th Cir.1987) (applying Indiana law), for instance, the court held that a water pumping station was "vacant" even though some miscellaneous water pumping equipment had been left behind by the previous tenant after it had ceased operations. *Id.* at 572 n. 2. Because the small amount of abandoned equipment obviously was not on the property as part of a current water pumping operation, the court concluded that there were no contents in the building *pertaining to operations or activities. See also Myers v. Merrimack Mut. Fire Ins. Co.,* 788 F.2d 468 (7th Cir.1986) (applying Illinois law) (finding apartment building "vacant" despite presence of certain insignificant items, including stoves and refrigerators); *but cf. Shaffner v. Farmers Mut. Fire Ins. Co. of St. Clair County,* 859 S.W.2d 902 (Mo.Ct.App.1993) (holding that dwelling was not vacant because of presence of stove, antique incubator, and chair).

We agree with the district court that "[b]y any reasonable interpretation of the policy language, [Catalina's] warehouse had been 'vacant' for 60 days prior to the fire," and that "[n]o reasonable jury could find otherwise." The judgment of the district court is accordingly affirmed.

*AFFIRMED.*