NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY

v.

NATIONWIDE FURNITURE, INC., et al.

No. 95–6470.

United States District Court,
E.D. Pennsylvania.

April 30, 1996.

Michael R. Nelson, Kenneth T. Levine and James E. Prendergast, Post and Schell, P.C., Philadelphia, PA, for Nationwide Mutual Life Insurance Company.

Gary Brownstein, Philadelphia, PA, for Nationwide Furniture, Inc.

Jay Barry Harris, Bonnie Brigance Leadbetter, Scott H. Brandt, and Diane C. Bernoff, Fineman and Bach, P.C., Philadelphia,

PA, for Fred Mazda, Khoudy Mazda and James Conway.

## MEMORANDUM

BARTLE, District Judge.

This case concerns the matter of insurance coverage for damage to a building owned by the individual defendants trading as Mazway Enterprises ("Mazway") and to the building's contents owned by a tenant, Nationwide Furniture Rental and Sales, Inc. ("Nationwide Furniture").[1]

Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide Insurance") issued a policy of insurance insuring Mazway and Nationwide Furniture for certain property losses. On April 19, 1994, a serious fire occurred at one of Mazway's buildings on North Second Street in the Northern Liberties section of Philadelphia. Nationwide Insurance has filed a declaratory judgment action seeking a declaration that no coverage exists. Defendants counterclaimed seeking payment under the policy for their losses as well as damages for bad faith. All parties have moved for summary judgment. *See Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ Nationwide Insurance first contends that no coverage exists because the building was vacant for more than 60 consecutive days before the loss and because the loss was caused by vandalism. The policy provides coverage for risks of physical loss but contains the following limitations under "Property Loss Conditions":

9. **Vacancy**

   *If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:*

   a. *Not pay for any loss or damage caused by:*

      (1) *Vandalism;*

      (2) Sprinkler leakage, unless you have protected the system against freezing;

      (3) Building glass breakage;

      (4) Water damage;

      (5) Theft; or

      (6) Attempted Theft.

   b. Reduce the amount we would otherwise pay for the loss or damage by 15%.

[emphasis added]. (Pltf.'s Mot.Sum.J. Ex. A at 26).

While the policy does not define vandalism, it does contain the following:

**"Specified Causes of Loss"** means the following:

*Fire;* lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; *vandalism;* leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

[emphasis added]. (Pltf.'s Mot.Sum.J. Ex. A at 31).

Mazway argues that even if the building were vacant, a proposition it vigorously denies, the policy provision eliminating coverage is not applicable because the building was damaged by fire and fire is not on the list of causes that preclude coverage. Moreover, Mazway argues that the term vandalism, as used in the policy, is ambiguous. Under Pennsylvania law, if the policy language is ambiguous, it must be construed against the insurer, the drafter of the policy. *Little v. MGIC Indem. Corp.,* 836 F.2d 789, 793 (3d Cir.1987). In addition, Mazway maintains any exclusionary clause should be strictly construed. *First Pennsylvania Bank v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.,* 397 Pa.Super..612, 580 A.2d 799, 802 (1990).

There is no question that Mazway's building was damaged by a fire. From the evidence before the court, it also appears that vandals set the fire. The policy in the paragraph entitled "Specified Causes of Loss" lists fire and vandalism as separate and distinct causes of loss. (Pltf.'s Mot.Sum.J. Ex. A at 31). In the vacancy paragraph, Nationwide Insurance says it will not pay for loss or damage caused by vandalism. *Id.* at 26. However, it does not exclude payment if the

1. The name is incorrectly denominated in the complaint as Nationwide Furniture, Inc.

loss is caused by fire. *Id.* If a loss occurs to a vacant building from other than an enumerated cause, the insurer's payment will only be reduced by 15%. *Id.*

■ It may very well be that both fire and vandalism in some sense were contributing factors to the damage. The vacancy paragraph does not specifically deal with such a situation. As far as the policy is concerned, it appears that the loss must be pigeonholed into one category or the other. It must be either a fire loss or a vandalism loss. Nationwide Insurance's underwriter, Jay Fesler, at his deposition, stated, "The peril of fire is caused by a fire. You know, unfriendly fire as we refer to it. And vandalism could be any numerous things, including fire obviously, but we think of them as different terms and different item." (Def.'s Mot. Sum.J. Ex. C at 81–82). Later in his deposition, Mr. Fesler agreed that the perils of fire and vandalism are *"normally associated as two separate perils."* [emphasis added]. *Id.* at 160. While Nationwide Insurance argues that vandalism includes intentional acts of an incendiary nature, it is not clear from the policy that this undefined term can be read so broadly. Because fire and vandalism are listed in the policy as separate causes of loss, we conclude that at best the word vandalism is ambiguous. It must be construed against the insurer so as not to encompass damage involving a fire. In other words, we interpret the policy to provide coverage when fire damages a vacant building even though vandals may have set the blaze. If Nationwide Insurance had wished the result to be otherwise, it could easily have defined vandalism to include non-accidental fires. It also could have added fire or at least intentionally ignited fire to the list of causes for which no payment would be made for damage to an unoccupied building.

Mazway cites *Catalina Enterprises v. Hartford Ins. Co.,* 67 F.3d 63 (4th Cir.1995). We find that case inapposite. First of all, it applied Maryland law, which interprets insurance policies in the same manner as contracts generally. *Id.* at 65. Unlike Pennsylvania, Maryland does not construe policies against the insurer. *Id.* In addition, the "vacancy or unoccupancy" clause in that case

was much broader than that found in the Nationwide Insurance policy. It provided:

*Vacancy or Unoccupancy.* This Company shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant, is vacant beyond a period of 60 consecutive days . . . .

*Id.* at 64–65.

The Hartford policy excluded all losses while the building was unoccupied. *Id.* In contrast, the Nationwide Insurance policy simply reduced the payment by 15% for all losses subject to the vacancy clause, except for certain specified losses, such as vandalism, for which no payment would be made. As Mazway points out, *Catalina* does contain a cogent statement about the increased risks associated with vacant buildings and the reasons for eliminating such coverage in fire policies. *Id.* at 66–67. Nonetheless, Nationwide Insurance, for whatever reason, decided not to insert an expansive vacancy exclusion in its policy.

■ Nationwide Insurance next argues that the maximum recovery under the policy is $112,500, plus interest, rather than some $893,000, which Mazway claims. The relevant undisputed facts are these. On February 26, 1993, Nationwide Furniture contracted to sell the property in question for $262,500 to Christian Schmidt Plaza Associates, L.P. ("Christian Schmidt"). The settlement date was extended on a number of occasions by mutual consent and payment of a fee. The property was still under that same agreement of sale more than a year later, on April 19, 1994, when the fire occurred. In September, 1994 Mazway terminated the agreement of sale for failure to complete settlement. On November 29, 1994, the parties entered into a new agreement of sale in which Mazway agreed to sell the property to Christian Schmidt for $150,000. Settlement took place in January, 1995. It is the difference between $262,500 and $150,000 or $112,500, which Nationwide Insurance contends is the limit of its liability to Mazway.

We start our analysis with the pertinent language of the insurance policy:

In the event of loss or damage covered by this policy:

a. At our option, we will either:

    (1) Pay the value of lost or damaged property;

    (2) Pay the cost of repairing or replacing the lost or damaged property;

    (3) Take all or any part of the property at an agreed or appraised value; or

    (4) Repair, rebuild or replace the property with other property of like kind and quality.

    .     .     .     .     .

c. *We will not pay you more than your financial interest in the Covered Property . . . .*

[emphasis added]. (Pltf.'s Mot.Sum.J. Ex. A at 25). Regardless of which payment option Nationwide Insurance selects, the policy thus limits Mazway's recovery to its "financial interest" in the building at the time of the fire.

There are a number of Pennsylvania decisions which deal with recovery of fire insurance proceeds when a blaze occurs after the parties sign an agreement of sale but before settlement is consummated. In the leading case of *Dubin Paper Co. v. Ins. Co. of N. Am.*, 361 Pa. 68, 63 A.2d 85, 90 (1949), the Supreme Court of Pennsylvania held that the vendor, after the signing of an agreement of sale and before conveyance, is the legal owner of the property while the buyer is the equitable owner. With respect to insurance proceeds, the court declared:

> . . . as between the insured and the insurance companies the insured remains the owner of the property until the sale is completed, but as between the vendor and the vendee the vendor holds only the legal title and if he receives the proceeds of the insurance policy on his property he holds these as trustee for the buyer. The vendee's interest was not insured by the defendants; the vendor's was. The vendee's right to a part of the policy proceeds in the vendee's [sic] hands is derived from the agreement of sale when that is given the meaning which under the circumstances of

this case the 'conscience of equity' says it must be given.

*Id.* at 93.

■ While the vendor may collect from its insurance company whatever is provided under the policy, it may retain for itself only the unpaid portion of the purchase price. *See Dubin Paper, supra* at 91. The seller holds the remainder as a trustee for the equitable owner, the buyer. *Id.* This apportionment, however, is of no concern to the insurance company. *Id.* It is solely a matter between the buyer and seller. *Id.*

The seller, however, is a fiduciary only in a narrow sense. As the Pennsylvania Supreme Court explained in *Partrick & Wilkins Co. v. Reliance Ins. Co.*, 500 Pa. 399, 456 A.2d 1348, 1351 (1983):

> . . . although a vendor is legally entitled to recover the proceeds of his insurance policy if the property is destroyed, the vendor's equitable entitlement to the proceeds extends only to the unpaid balance of the purchase price; any excess is deemed to be held 'in trust' for the vendee. . . . As this Court has often stated, a constructive trust is not a trust in the ordinary sense of the term but simply an equitable remedy designed to prevent unjust enrichment. . . . Unlike the duties of a traditional fiduciary, 'the sole responsibility of a constructive trustee is to surrender the property to the one on whose behalf the constructive trust is raised.'

It is fundamental, however, that the amount and nature of the insurance proceeds, which the vendor is entitled to receive from the insurer, depends in the first instance on the terms of the insurance policy itself. This is so, whether or not the vendor must hold some or all of the proceeds in constructive trust for the buyer. Clearly, the right of a party to recover under an insurance contract can never be greater than the contract itself allows.

■ While Pennsylvania law permits a seller to receive and hold in trust insurance proceeds that belong as a matter of equity to the buyer, the seller has no fiduciary responsibility to insure the buyer's interest in the first place or to attempt to maximize any

insurance recovery for the buyer. *See Partrick & Wilkins, supra* at 1350–51. We know of no court decision that outlaws policy language restricting the seller's recovery solely to an amount that benefits the seller. The contracting parties are free to exclude any payment in which a buyer may have an equitable or beneficial interest.

It must be emphasized that Nationwide Insurance did not agree simply to pay Mazway the value of the loss or to repair or replace the damaged property. The Nationwide Insurance contract was more limited. Rather, it agreed to compensate Mazway only to the extent of its financial interest at the time of the loss. This can only mean what Mazway may keep and use for itself. Under Pennsylvania law, any insurance proceeds which Mazway would receive over and above the purchase price would be held in a constructive trust for the buyer to prevent unjust enrichment of the seller. *Partrick & Wilkins, supra.* While the seller may have bare legal title temporarily, it obviously cannot have a financial interest in funds, the retention and use of which would constitute unjust enrichment. A trustee of funds owes a fiduciary duty; it does not own a financial interest. Thus, Mazway's financial interest here cannot exceed the selling price of the building. Mazway may recover from Nationwide Insurance no more than $262,500, plus interest.

The insurance policies, in the cases cited by Mazway, are different from the one in suit. They all permitted recovery for the full amount of the loss, without reduction for the buyer's equitable interest. They did not specifically limit the seller's recovery to its financial interest in the property. Thus, as a matter of contract, the seller in those cases could collect insurance proceeds, such as full replacement, cash, or market value, without regard to the fact that the property, at the time of the loss, was under agreement of sale. But even there if the seller collected from the insurer the full amount, as between the buyer and seller, the latter would only be allowed to retain so much of the proceeds as to make it whole for the selling price.

■ Nationwide Insurance further contends that we must cap Mazway's recovery at $112,500, the difference between the $262,500 and the $150,000 ultimately received from the buyer in January, 1995 under a new agreement of sale. This argument is without merit. The first agreement of sale was terminated in September, 1994 and a new deal was not struck until November of that year. Mazway's financial interest, however, on April 19, 1994, the date of the fire, was $262,500, minus any of the purchase price that had already been paid. As far as Nationwide Insurance is concerned, we must freeze the picture as of that date. We apply the language of the insurance contract to the facts as they existed at that point in time. Whatever happens to the seller's financial interest thereafter is of no concern to the insurance company. If, for example, the agreement with Christian Schmidt had been abrogated the day after the loss and Mazway later had been able to sell the damaged property to the same or a different buyer for $1,000,000 because it was worth more without the building, the insurance company could not successfully argue that the owner had suffered no loss when the fire took place. *See Dubin Paper, supra.* We must focus on Mazway's financial interest at the time of the loss, and not on later events, be they favorable or unfavorable to Mazway.[2]

The parties raise other matters on which they seek summary judgment. As to these, genuine issues of material fact exist. They will have to await a trial.

### ORDER

AND NOW, this 30th day of April, 1996, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

---

2. If, because of subsequent events, the buyer under principles of equity were entitled to some of the proceeds, it would be a matter solely between the seller and buyer, and not the insurance company. The latter is concerned only with its contractual obligation as of the time of the fire. The buyer, for example, may have paid the full purchase price at settlement, not aware at that time that the seller had received from the insurer its financial interest in the amount of the purchase price. In this situation, it appears that the buyer would be entitled to seek equitable relief to recover the proceeds from the seller, which is being unjustly enriched. The insurer, however, would not have any involvement since it had fulfilled its contractual obligation by paying the seller what was due under the policy as of the date of the fire.

(1) the motion of plaintiff for summary judgment declaring that the vacancy exclusion of the insurance policy precludes coverage is DENIED, and the motion of the defendants for summary judgment that the vacancy exclusion does not preclude coverage is GRANTED;

(2) the motion of the plaintiff for summary judgment declaring that the financial interest clause of the insurance policy limits defendants' coverage is GRANTED to the extent that defendants' maximum recovery for loss to the building is $262,500 plus interest, and the motion of defendants for summary judgment with respect to the financial interest clause is DENIED; and

(3) in all other respects, the motions of the parties for summary judgment are DENIED.