Filed:  December 11, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

------------

No. 96-1226
(CA-94-2543-Y)

------------

National Union Fire Ins. Co., etc.,

Plaintiff - Appellee,

versus

CSX Corporation, et al,

Defendants - Appellants.

------------

O R D E R

------------

The Court amends its opinion filed April 14, 1997, as follows:

On the cover sheet, section 2, line 1, and on page 2, first paragraph of the opinion, line 3 -- the name "National Union Life Insurance Company" is corrected to read "National Union <u>Fire</u> Insurance Company."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA,
<u>Plaintiff-Appellee,</u>

v.

CSX CORPORATION; CSX
INTERMODAL, INCORPORATED; CSX
INTERMODAL, INCORPORATED, Motor

Carrier Operations; CSX SERVICES,
INCORPORATED; O-O TRUCK SALES,
INCORPORATED; CSX/SEA-LAND
TERMINALS, INCORPORATED; BARONIAL
TRANSPORTATION CORPORATION;
CUSTOMIZED TRANSPORTATION,
INCORPORATED; CUSTOMIZED
TRANSPORTATION, LIMITED,
<u>Defendants-Appellants.</u>

No. 96-1226

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(CA-94-2543-Y)

Argued: January 30, 1997

Decided: April 14, 1997

Before WILKINSON, Chief Judge, and HAMILTON and
MICHAEL, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Kenneth C. Bass, III, VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Appellants. Mark Andrew Dombroff, DOMBROFF & GILMORE, P.C., Washington, D.C., for Appellee. **ON BRIEF:** James K. Archibald, VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Appellants. Thomas B. Almy, Deborah S. Goldenberg, Mark E. Mc-Kinnon, DOMBROFF & GILMORE, P.C., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

CSX Intermodal, Inc. and several related corporations (collectively "CSXI") appeal the award of a declaratory judgment to National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) on National Union's claim that its insurance policy issued to CSXI did not cover CSXI's liability related to a train wreck near Selma, North Carolina. Because a further determination is necessary, we vacate the judgment and remand for additional proceedings in light of this opinion.

I.

CSXI, a wholly-owned subsidiary of CSX Corporation (CSX), transports goods in truck trailers and then transfers the trailers onto flatbed railway cars for shipment by rail. CSXI calls this "intermodal transportation." On May 16, 1994, near Selma, North Carolina, a southbound Amtrak passenger train wrecked when a trailer on a northbound CSX train came loose and rotated into the path of the oncoming Amtrak train. The Amtrak train rammed the loosened

2

trailer and derailed, killing the assistant engineer, injuring eleven passengers and crew, and causing considerable property damage. The trailer that came loose had been loaded onto the railcar by CSXI.

When the accident occurred, CSXI held two excess liability insurance policies issued by National Union. In anticipation of being named as a defendant in lawsuits arising from the train wreck, CSXI filed a notice of accident with National Union. In response, National Union filed a declaratory judgment action against CSXI seeking a declaration that it was not obligated to defend or indemnify CSXI for this accident. National Union based its claim on the policies' railroad liability exclusions.[1] The lower layer policy's exclusion, which is the focus of this appeal, reads as follows:

> It is understood and agreed that National Union Fire Insurance Company of Pittsburgh, Pa's policy number BE 308-90-34, shall not provide coverage for any claim(s), suits[ ], or liabilit(ies) involving the operation and maintenance of a railroad. All other terms and conditions of this policy remain unchanged.

JA 499.

National Union's principal argument was that the claims against CSXI were for injuries sustained in a rail collision, and therefore the claims involved the operation of a railroad. In response CSXI contended that any liability on its part stemmed from its loading of the trailer onto the railcar, which was not a railroad operation and therefore coverage was not precluded by the policy's railroad exclusion. After a two-day bench trial, the district court granted National Union declaratory relief. The district court did not make any determination as to whether CSXI's activities involved railroad operations. Instead, the district court determined that "[t]he role of [CSXI] in the underly-

---

[1] The railroad liability exclusion in the upper layer policy excluded coverage for "any damages arising of [sic] the ownership, maintenance, operations, use, loading or unloading of any locomotive, railcar or railroad operations." The district court concluded that the upper layer policy's exclusion clause barred coverage under that policy. CSXI does not appeal this determination, so we consider only the lower layer policy.

3

ing claim is irrelevant to the blanket railroad liability exclusion." Because the train accident itself involved the operation of a railroad, the district court held that the claims arising out of the accident were within the exclusion. JA 50. CSXI appeals.

## II.

Both parties agree that Maryland law applies. In a declaratory judgment action that presents an issue of coverage "it is the function of the court to interpret the policy and decide whether or not there is coverage." Lloyd E. Mitchell, Inc. v. Maryland Casualty Co., 595 A.2d 469, 475 (Md. 1991) (citations omitted). "Maryland insurance policies ordinarily are construed in the same manner as contracts generally." Collier v. MD-Individual Practice Assoc., Inc., 607 A.2d 537, 539 (Md. 1992). Thus, Maryland does not follow the rule adopted in many states "that an insurance policy is to be construed most strongly against the insurer." Cheney v. Bell Nat'l Life Ins. Co., 556 A.2d 1135, 1138 (Md. 1989). When the language of the contract is plain and unambiguous the test is not what the parties intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. American Casualty Co. v. Resolution Trust Corp., 845 F. Supp. 318, 325 (D. Md. 1993). Finally,

> If the language is ambiguous, extrinsic evidence may be consulted. If the extrinsic evidence presents disputed factual issues, construction of the ambiguous contract is for the jury [or factfinder]. The court may construe an ambiguous contract if there is no factual dispute in the evidence. If after considering extrinsic evidence, the ambiguity remains, it will ordinarily be resolved against the party who drafted the contract.

Collier, 607 A.2d at 539 (citation omitted).

Under Maryland law there is a two-part inquiry for determining whether the insurance company has a duty to defend or indemnify its insured under a liability policy. The test is set forth in St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282, 285 (Md. 1981):

4

In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and the requirements of the policy, and the second question focuses upon the allegations of the tort suit.

For purposes of this case we emphasize that "the `facts' relevant to coverage are those alleged in the [plaintiff]'s complaint in the underlying action." Home Exterminating Co. v. Zurich-American Ins. Group, 921 F. Supp. 318, 319-20 (D. Md. 1996) (interpreting Maryland law).

We believe the district court, in deciding the coverage question, erred by ignoring the facts alleged to support the claims made against CSXI in the underlying action. In other words, the court should have decided whether the allegations against CSXI in the tort action brought the claim within the policy's coverage, after taking into account the exclusion.

The coverage clause of the policy obligates National Union to pay that amount, within policy dollar limits, which CSXI would "become legally obligated to pay as [damages] because of . . . liability imposed upon [CSXI] by law . . . ." JA at 503. Of course, the issue in this case is the proper interpretation of the railroad liability exclusion, which states that the policy "shall not provide coverage for any claim(s), suits[ ] or liabilit(ies) involving the operation . . . . of a railroad."

The district court interpreted the exclusion by focusing only on the type of accident -- there was a train wreck. Thus, the court concluded, "The role of the insured [CSXI] in the underlying claim is irrelevant to the blanket railroad liability exclusion. Because the train accident on May 16, 1994 involved the operation of a railroad, claims arising out of the accident are included within the exclusion." JA 50.

The error in looking only at the type of accident rather than the alleged wrongdoing of the insured is confirmed by a hypothetical

5

mentioned both at trial and at oral argument before us. Suppose that a CSXI truck was negligently stopped on a railroad crossing, and a passenger train, through no fault of its crew, struck the truck. Passengers were injured in the collision and sued CSXI. Would the railroad liability exclusion operate to deny coverage to CSXI for these claims resulting from the collision? Both National Union's expert at trial and its lawyer at oral argument conceded that the exclusion would not apply to CSXI in the hypothetical. The expert said the exclusion would not apply because in the crossing case "CSXI was engaged in a trucking [not a railroad] activity." JA 151. Yet under the district court's approach the railroad liability exclusion would apply to the hypothetical because the claim against CSXI arose out of an accident involving the operation of a railroad. The district court, it seems, would never look to CSXI's activity, but we believe that approach is contrary to Maryland law.

Under Maryland law the factual allegations in the underlying tort action must be examined to determine if CSXI's allegedly negligent acts are within the policy's coverage. <u>See Pryseski</u>, 438 A.2d at 285. Here, the widow of the assistant engineer killed in the accident filed a complaint alleging that CSXI negligently loaded the trailer onto the railroad flat car, negligently fastened the trailer to the flat car, failed to inspect or inadequately inspected the trailer to determine if it was properly loaded and secured, and failed to have inspection procedures to ensure that an improperly secured trailer would be detected. JA 187-88. According to the widow's complaint, these acts and omissions of CSXI were the proximate cause of the train wreck that led to her husband's death.

Because coverage must be determined by looking at the factual allegations of wrongdoing in the underlying complaint, National Union may deny coverage in this case only if CSXI was involved in the operation of a railroad when it engaged in the acts and omissions that allegedly caused the train wreck. We come, then, to what the phrase "operation of a railroad" means under the facts and circumstances of this case. In other words, was CSXI involved in the operation of a railroad when it loaded and fastened the trailer onto the flatcar for further transport? In this context, we believe the phrase "operation of a railroad" is ambiguous.[2] In light of this ambiguity,

_____

[2] The policy does not define "operation of a railroad."

6

extrinsic evidence must be considered. See Collier, 607 A.2d at 539. Here the extrinsic evidence introduced at trial reveals that there is a factual dispute about whether CSXI's activity in loading the trailer on the railroad car involved the operation of a railroad.

National Union's evidence that CSXI's loading and unloading a railcar involved the "operation of a railroad" included the following: (1) CSXI engages in intermodal transportation, which CSXI has described as "the shipment of goods in standard-sized containers via two or more modes of transportation, usually rail and truck," JA 353; (2) the railroad industry, its trade associations and railroad unions consider loading semitrailers onto a railcar to be a railroad operation, JA 202-320; and (3) some of CSXI's advertisements talk about where its trains operate. JA 363.

CSXI's evidence that its activities did not involve the operation of a railroad included the following: (1) CSXI's responsibilities do not include any movement of the railcars containing the trailers; its responsibilities are confined to transporting the trailers over public highways by truck and placing the trailers onto railcars in originating intermodal terminals and unloading the trailers off of the railcars in destination terminals, JA 72-73, 114-17; and (2) once the trailers are placed on the railcars, all responsibility for the rail transportation of the trailers shifts to the railroad operating company, which is not CSXI. JA 122-23.

There was also testimony about the negotiations that surrounded the drafting of the insurance policy, and each side's representative differed on whether the loading of railcars by CSXI was meant to be included or excluded. JA 100, 117. In addition, CSXI submitted loss histories relating only to automobile and trucking liabilities, JA 104; no part of the premium was based on railroad operations, JA 103; and the language of the railroad liability exclusion in the upper layer policy differs from the language in the lower layer policy. National Union and CSXI disagree about whether this evidence is relevant and how it should be interpreted.

Although the evidence we have summarized above was in the record, the district court made no determination at the conclusion of the bench trial about whether CSXI's activity alleged in the underly-

7

ing complaint involved the operation of a railroad. The district court erred in not making that determination because whether CSXI's activities involved the operation of a railroad governs whether the railroad operation exclusion applies. We therefore vacate the judgment and remand for further proceedings consistent with this opinion. We leave it to the district court's discretion whether the record needs to be re-opened for the taking of additional evidence on the dispositive issue.

VACATED AND REMANDED

8